IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for Washington Federal Bank for Savings, | ) ) ) ) | Case No. 18-cv-5501 |
| Petitioner, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) ) | |
| BANSLEY & KIENER L.L.P, | ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Federal Deposit Insurance Corporation ("FDIC-R"), in its capacity as a receiver for a failed bank, Washington Federal Bank for Savings ("WaFed"), has petitioned the Court to enforce an administrate subpoena issued to an accounting firm that represented WaFed, Bansley & Kiener, L.L.P. ("B&K"). For the reasons stated below, the Court grants the FDIC-R's petition. However, this order shall not preclude B&K from opposing any individual request made within the subpoena, if it can show that the specific request is overly broad or unduly burdensome. B&K shall comply with the subpoena in a timely manner and without delay.[1] Petition to enforce granted; civil case terminated.

**I.    Background[2]**

Between 2012 and 2017, B&K audited the consolidated financial statements of Washington Bancshares, Inc. ("WBI") and its subsidiary, WaFed. In its audit reports, B&K opined that WaFed's financial statements fairly presented its financial position in all material respects. On June 6, 2017, B&K issued a clean opinion on WaFed's financial statements that included no qualifications on B&K's opinion on WBI's ability to continue as a going concern. Six months later, however, WaFed's board of directors authorized charge-offs of $61.5 million, nearly half the bank's loan portfolio. The charge-off left WaFed critically undercapitalized and resulted in the bank's failure on December 15, 2017.

---

[1] The parties have not addressed what would constitute an appropriate time frame in which B&K reasonably could be expected to comply. In its petition [see 1, at 5], FDIC-R simply requests an order that B&K produce all responsive documents "without further delay." Without more help from the parties on this point, the Court cannot set a more precise deadline that the one indicated in the text above.

[2] Given the facts do not appear to be in dispute, the Court takes all facts as set forward by the FDIC-R's Petition to Enforce Administrative Subpoena [1], unless otherwise noted.

Among other things, the FDIC-R is investigating what caused the losses, why they were not discovered earlier, what audit work B&K performed, and whether WaFed's accountants or other professionals are responsible for WaFed's losses. The FDIC-R seeks to learn what documents and information the directors, officers, and employees of the bank communicated to B&K, how B&K designed and performed its audit procedures, and what audit evidence it relied upon to issue its opinions that the financial statements were free of material misstatements resulting from error or fraud. To that end, on January 16, 2018, the FDIC-R determined that an investigation into possible wrongdoing by the various professionals who provided services to WaFed was warranted, and issued an "Order of Investigation" authorizing the use of subpoenas in the course of this investigation. See [1-1, at 40].

The Order of Investigation prepared by the FDIC's Deputy General Counsel explained that in light of information that he had received putting into doubt the actions of former accountants, directors, officers, and attorneys who had provided services to WaFed, he was authorizing an investigation to determine:

> (a) whether such former accountants, directors, officers, and attorneys may be liable as the result of any actions or failures to act that may have affected the Bank; and

> (b) whether pursuit of litigation would be cost effective, considering the extent of the potential defendants' ability to pay a judgment in any such litigation.

[1-1, at 40.][3]

Pursuant to the Order of Investigation, the FDIC-R issued a subpoena *duces tecum* to B&K on February 26, 2018 ("the Subpoena"). See [1-1, at 42–46]. Among other documents, the Subpoena sought disclosure of: "all documents related to B&K's audits of WaFed's consolidated financial statements between 2012 and 2017, including work papers, B&K's communications with WaFed and third parties, WaFed records provided to B&K, B&K's policies and procedures, and its insurance policies." The FDIC-R asserts that it requested these and other categories of documents to investigate whether B&K, as WaFed's former auditor, or other professionals may be liable as the result of any actions or failures to act that may have affected WaFed and whether any litigation against B&K would be cost-effective.

Exactly one month later, on March 26, 2018, B&K objected to the Subpoena in its entirety and stated that it would not produce any responsive documents. See [1-2, at 4]. After further discussions proved unfruitful, the FDIC-R filed this action to enforce the subpoena on August 13, 2018. [1.] B&K responded [16], and the Court now resolves petition.

## II. Legal Standard

The Seventh Circuit has described the courts' role in subpoena enforcement proceedings as "sharply limited." *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987). Courts will enforce an administrative subpoena so long as it seeks "reasonably relevant information, it is not indefinite, and relates to an investigation within the agency's authority." *E.E.O.C. v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995). However, a court must ensure that the

---

[3] The Order of Investigation also authorized investigation into whether FDIC-R should seek to avoid a transfer of any interests or incurrence of any obligations and whether it should seek to attach assets. [1-1, at 40.]

demand for information is sufficiently definite and has been made for a legitimate purpose. *Id.* Similarly, the court may not enforce the subpoena if the demand is "excessively burdensome," in other words, if "compliance would threaten the normal operation of a respondent's business." *Id.* (quotation marks and citations omitted).

### III. Analysis

B&K opposes the FDIC-R's subpoena on three grounds: (1) the subpoena has an improper purpose; (2) the subpoena is overly broad, unduly burdensome, and violates the Fourth Amendment; and (3) the documents sought are subject to the Illinois Accountant's Privilege and may therefore be withheld. In the alternative, should the Court elect to enforce the Subpoena, B&K requests an order finding that its documents are confidential, and that production does not waive any privilege available to B&K under state law.

#### A. The FDIC-R's Subpoena has a Proper Purpose

B&K asserts that the Court may not enforce the Subpoena because it has an improper purpose: to determine "whether pursuit of litigation would be cost-effective considering the extent of the potential defendants' ability to pay a judgment in such litigation." [1-1, at 40.] The Court disagrees.

First, as previously explained, the cost-effectiveness of any future litigation is just one of the four separate purposes of the investigation listed in the Order of Investigation. See [1-1, at 40.] The FDIC-R also ordered the investigation to determine whether B&K may be liable "as a result of any actions or failures to act that may have affected the Bank." [*Id.*] And, even if the FDIC-R only relied on the justification with which B&K takes issue, the Court agrees with those courts that have held that determining the value of any litigation constitutes sufficient justification for an administrative subpoena. See, e.g., *Resolution Tr. Corp. v. Thornton*, 41 F.3d 1539, 1541 (D.C. Cir. 1994) ("In *FTC v. Invention Submission Corp.*, 965 F.2d 1086 (D.C. Cir. 1992), cert. denied, 507 U.S. 910 [ ] (1993), we recognized that administrative agencies may subpoena a corporation's financial documents solely to ascertain the cost-effectiveness of pursuing contemplated litigation against the corporation.").

Moreover, cost-effectiveness is not even the primary purpose of the Subpoena. Rather, the Subpoena's primary purpose appears to be determining whether B&K may be liable for any actions or failures to act that affected WaFed. See [1-1, at 2–3, 40]. As explained above, within six months of B&K's issuance of a clean audit for the prior year, WaFed announced charge-offs equal to almost half its loan portfolio. Given that an agency may issue subpoenas "merely on suspicion that the law is being violated, or even just because it wants assurances that it is not," *United States v. Morton Salt Co.*, 338 U.S. 632, 643 (1950), the Court can only conclude that an investigation into B&K's audits of WaFed is a proper purpose.

#### B. The FDIC-R's subpoena is not Overly Broad, Unduly Burdensome, and does not violate B&K's Fourth Amendment Rights

B&K next argues that the Court may not enforce the Subpoena because it seeks "any and all records of any kind relating to audits for multiple years, as well as documents relating to all

3

fees paid to B&K." [16, at 3.] As B&K describes it, the Subpoena amounts to an impermissible "fishing expedition." [*Id.*]

As a bank receiver, the FDIC-R may "perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver" and "preserve and conserve the assets and property of such institution." 12 U.S.C. §§ 1821(d)(2)(B)(iii–iv). Consistent with the powers granted by Congress to carry out those functions, the FDIC-R may issue subpoenas, with few limitations. See *In re Gimbel*, 77 F.3d 593, 596 (2d Cir. 1996) ("the statute that empowers the FDIC to issue subpoenas 'places few restrictions on that power'") (quoting *In re McVane*, 44 F.3d 1127 (2d Cir. 1995); *F.D.I.C. v. Garner*, 126 F.3d 1138, 1143 (9th Cir. 1997) ("The statute authorizing the FDIC to issue subpoenas contains few restrictions."). As 12 U.S.C. § 1821(d)(2)(I)(i) explains

> The corporation may, as conservator, receiver, or exclusive manager and for purposes of carrying out any power, authority, or duty with respect to an insured depository institution (including determining any claim against the institution and determining and realizing upon any asset of any person in the course of collecting money due the institution), exercise any power established under section 1818(n) of this title * * *.

And, 12 U.S.C. § 1818(n) authorizes the FDIC to "issue, revoke, quash, or modify subpoenas and subpoenas duces tecum." Furthermore, as just explained, an agency may issue subpoenas "merely on suspicion that the law is being violated, or even just because it wants assurances that it is not." *Morton Salt Co.*, 338 U.S. at 643 (comparing agencies' investigative powers to that of grand juries).

Nonetheless, B&K asserts that Court may not enforce the the Subpoena because the FDIC-R has not put forward any specific evidence of wrongdoing by B&K. That argument, however, has been squarely rejected by the Seventh Circuit. As the court of appeals explained in *Commodity Futures Trading Comm'n v. Tokheim*,

> If, as Tokheim argues, the Commission first had to make a valid finding of coverage before it could enforce an investigatory subpoena, it would be unable to fulfill its investigatory responsibilities under the Act. The traditional understanding of an agency's investigatory powers is precisely to the contrary.

153 F.3d 474, 477 (7th Cir. 1998). And the notion that the Fourth Amendment prohibits the FDIC from conducting "a fishing expedition" into B&K's private papers—first expounded in *FTC v. American Tobacco Co.*, 264 U.S. 298, 305–06 (1924)—was expressly abandoned by the Supreme Court in its decisions in *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186 (1946), and *Morton Salt*, 338 U.S. 632 (1950). See *McVane*, 44 F.3d at 1134.

Although "a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter under inquiry as to exceed the investigatory power," *Morton Salt*, 338 U.S. at 652, B&K does not point to a single request that is completely unrelated to (1) whether B&K properly audited WaFed, such that it could not have predicted WaFed's later decision to charge-off an amount nearly equal to half its loan portfolio, or (2) whether an action against B&K would be fruitful. Nor does B&K provide any support for the assertion that any of the requests would be unduly burdensome. Thus, the Court cannot conclude on a blanket basis

that the Subpoena is overly broad, unduly burdensome, or violates B&K's rights under the Fourth Amendment. With that said, B&K is not precluded from objecting to any particular request of the Subpoena as overbroad or unduly burdensome.

      C.      **The Illinois Accountant's Privilege Cannot Protect Documents from the FDIC-R's Subpoena**

Finally, B&K asserts that if the Subpoena is valid, many if not all the documents the FDIC-R seeks are protected by the Illinois Accountant's Privilege. The Court disagrees. Contrary to B&K's suggestion, it is an entirely different question whether the documents produced in accordance with this Subpoena may be used against B&K in a later suit. The question here is simply whether the Illinois Accountant's Privilege operates to inoculate B&K from responding to an administrative subpoena from a federal agency. It does not.

"State privileges are honored in federal litigation only when state law supplies the rule of decision. When federal law governs, as it does [in a petition to enforce an administrative subpoena], only privileges recognized by the national government matter." *E.E.O.C. v. Illinois Dep't of Employment Sec.*, 995 F.2d 106, 107 (7th Cir. 1993) (citing U.S. Const. art. VI, cl. 2). Thus, as in *E.E.O.C.*, the Court must decide whether Federal Rule of Evidence 501 countenances the incorporation of Illinois's Accountant's Privilege. See Fed. R. Evid. 501 ("The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege").

As the Seventh Circuit most recently explained in *Hamdan v. Indiana University Health North Hospital, Inc.*, "[a] party arguing for a new evidentiary privilege under Rule 501 must confront the general obstacle that evidentiary privileges are disfavored because they impede fact-finding by excluding relevant information." 880 F.3d 416, 421 (7th Cir. 2018) (citations omitted). In view of their disfavored status, the Seventh Circuit and Supreme Court have rejected arguments seeking the recognition of various new privileges including an "unemployment-insurance privilege," an "academic-deliberation privilege," and a "reporter's source privilege." See *E.E.O.C.*, 995 F.2d at 108; *University of Pennsylvania*, 493 U.S. 182 (1990); *Branzburg v. Hayes*, 408 U.S. 665 (1972). Given the strong presumption against the recognition of new privileges, and B&K's failure to provide any justification for concluding otherwise, the Court declines to incorporate Illinois's Accountant's Privilege.

The cases cited by B&K to support the notion that the accountant's privilege should apply in this case are inapposite. All of them addressed situations in which state law provided the rule of decision, and thus situations in which F.R.E. 501 specifically recognizes state privilege law applies. See Fed. R. Evid. 501("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); see, e.g., *Dietz v. U.S. (Fed. Deposit Ins. Corp.)*, 1992 WL 26712, at *1 (N.D. Ill. Feb. 7, 1992) (adopting state privilege law in a slip and fall case against the FDIC); *Davis v. Leal*, 43 F. Supp. 2d 1102 (E.D. Cal. 1999) (applying state privilege law in a suit by the FDIC and debtor's receiver asserting state claims against real estate manager); *In re Megan-Racine Assocs., Inc.*, 189 B.R. 562, 567 (Bankr. N.D.N.Y. 1995) (applying state privilege law in an adversary proceeding within a bankruptcy that asserted state law claims). None of the cases cited by B&K addressed a situation where, as here, an agency sought to enforce an administrative subpoena and federal law supplied the rule of decision.

Nor can the Court accept B&K's argument that the Court should treat this action to enforce the Subpoena as the first stage of any eventual suit against it. First, B&K has not come forward with any authority to support such a conclusion. Second, whether any documents produced in response to the Subpoena may be used against B&K in a later suit, is at this point a hypothetical question which the Court cannot answer in the current vacuum. If and when the FDIC-R files suit against B&K, B&K can renew its argument that any documents that are subject to the Illinois Accountant's Privilege may not be used against it. At this time, however, B&K may not use the privilege as a basis to refuse to respond to the FDIC-R's administrative subpoena.[4]

### D. The Court will not issue a Finding that B&K's Documents are Confidential and that Production does Not Waive any Privilege under Illinois Law

Finally, in the alternative, B&K requests that the Court "enter a finding that B&K's documents are confidential, that they cannot be provided to any other party or used in any civil litigation, and that its production of documents does not waive any privilege available to it under state law in any future litigation." [16, at 12–13.] The Court notes B&K's concern that any documents it produces to the FDIC-R, which would otherwise be protected by the Accountant's Privilege, may lose their privilege if the Court enforces the Subpoena (as it has concluded to do). However, whether the privilege will apply to documents produced in response to the Subpoena in any eventual suit against B&K is not properly before the Court. Similarly, as to the "fairness" of the FDIC-R's ability to use its administrative subpoena power to gain access to documents that may otherwise be privileged, Congress has given the FDIC-R an extraordinarily broad power to subpoena documents it thinks it may need as part of its mandate to operate failed banks and "preserve and conserve" their assets. This is Congress' prerogative and arguments to revoke that broad power are properly addressed to Congress, not this Court. In any event, B&K has provided no precedent or authority to suggest that this Court even has the power to issue the kind of order that it seeks. Consequently, the Court denies B&K's request.

### IV. Conclusion

For the foregoing reasons, the Court grants the FDIC-R's request for summary enforcement of its subpoena *duces tecum*. B&K shall comply with the subpoena in a timely manner and without delay. Petition to enforce granted; civil case terminated.

Dated: March 22, 2019

Robert M. Dow, Jr.
United States District Judge

---

[4] Because the Court concludes that the Illinois Accountant's Privilege does not apply, it does not address the FDIC-R's other arguments, or B&K's responses, regarding why the privilege does not bar production in this case.